UNITED STATES DISTRICT COURT

COUNTY COURT OF LANCASTER COUNTY, NEBRASKA

| | |
|---|---|
| JEWISH LEGAL NEWS, INC., a non-profit Corporation,<br><br>Relator,<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, LINCOLN, and JACLYN KLINTOE, in her official capacity as Custodian of Records,<br><br>Respondents. | Case No.: _____<br><br>**VERIFIED PETITION FOR WRIT OF MANDAMUS** |

Comes now, Relator JEWISH LEGAL NEWS, INC., ("Relator" or "JLN") brings this Verified Petition for Writ of Mandamus against the BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, LINCOLN, and JACLYN CLINTOE, in her official capacity as CUSTODIAN OF RECORDS (together, "Respondents," or "University of Nebraska," or, "UNL") and make the following allegations based on personal knowledge:

**INTRODUCTION**

1. Jewish Legal News, Inc. brings this Petition for a Writ of Mandamus to compel UNL to describe and disclose records requested pursuant to the state Public Records Act ("PRA" or "Act"), Neb. Rev. Stat. § 84.712 et seq.

2. The Jewish Legal News, Inc. ("JLN") is a non-profit online news magazine located at www.jewishlegalnews.com. JLN covers news and debates important to the Jewish community, including

1

the controversial topic of how to teach about the Holocaust. JLN conducts independent research, among other ways, by sending public records requests.

3. Holocaust education is among the most critical tasks our society faces, requiring deep respect, unfailing intellectual rigor, and a steadfast commitment to truth and impartiality. Our respect for the task shows we are serious about ensuring such atrocities are never repeated.

4. Whether Holocaust education is effective in reducing antisemitism is widely debated in the Jewish community. *See e.g.,* Horn, Dara. "*Is Holocaust Education Making Anti-Semitism Worse?*" *The Atlantic*, May 2023 (last accessed July 23, 2023).[1]

5. JLN's requests to the University of Nebraska at Lincoln were to audit the Sommerhauser Holocaust Symposium ("the Symposium"). The most recent Symposium was held on March 27, 2023.

6. However, UNL's responses to JLN's requests about the 2023 Symposium raised significant concerns about the care with which UNL is fulfilling its commitment to academic inquiry on this important topic. When JLN audited the event, UNL responded with a lack of transparency and the optics of partisanship.

7. What little information UNL produced in response to the public records requests indicated that the Holocaust Symposium was used, not as a tool to educate the public, but instead to target the political opponents of the UNL professors planning the conference. Professors Ari Kohen and Gerald J. Steinacher, who are in charge of the Symposium, apparently see today's evil emanating from modern day Christians, and even those in Nebraska.

8. Unfortunately, in their zeal to tarnish the viewpoints of the opposition, the professors brought their assumed and preconceived conclusions about Christians, and in doing so, failed to adhere to academic standards in planning the Holocaust Symposium. Professors Kohen and Steinacher did not employ any formal process, investigation into current academic research, or any scrutiny of the presentations in their planning of the conference.

---

[1] https://www.theatlantic.com/magazine/archive/2023/05/holocaust-student-education-jewish-anti-semitism/673488/

2

9. Instead, the professors selected "scholars" for the Symposium because they were "Twitter Followers" of Professor Kohen's Twitter account, @kohenari. *See* Exhibit "A," Email from Professor Steinacher to Professor Kohen ("I looked at your list of your contacts (Twitter) and there are some very, very interesting people among them, Federico Finchelstein (History of Fascist Lies), Casey Kelly (Trump Racism), Daniel Ziblatt (How Democracy dies), Sarah Kendzior (Trump, USA), ALTEMEYER (Extremists scale), Zack Beauchamp (Right wind populism, West). They all look great for our project."

10. The very topic of the Symposium, "Fascism: Then and Now," appeared to be selected to maximize political impact against the professors' opponents. Comparing "Fascism" – then and now – allowed the professors to muster up the memory of historical Nazi fascism and portray their modern day political opponents as the today's embodiment of that evil historical movement. The professors decided that the Symposium should connect "the historical study of the Holocaust" to their opinions of modern "antisemitism, racism, political extremism, and ethno-nationalism."[2]

11. As the Holocaust is a unique historical event, Jewish critics have questioned the wisdom of using Holocaust education to launch attacks against modern day political opponents, and have termed this dogma "Holocaust Universalism." *See e.g., Wisse, Ruth R*. "The Dark Side of Holocaust Education." *National Affairs*, No. 56. Summer 2023. (last accessed July 25, 2023).[3]

12. Transparently, Professors Kohen and Steinacher hoped to harness the memory of the Holocaust to assign blame for today's prejudices squarely on their political opponents. The professors could more easily labeled their opponents today's "Nazis." This was consistent with the viewpoints espoused on Professor Kohen's Twitter account, where Professor Kohen commonly called his opponents "extremists" and "Nazis," even while describing modern day politicians and fellow Nebraskans.

13. The professors invited only presenters from the narrowest slice of their left-wing political spectrum who already agreed with their predetermined strategy. Just by looking at the titles of the

---

[2] https://sites.google.com/view/geraldsteinacher/news

[3] https://www.nationalaffairs.com/publications/detail/the-dark-side-of-holocaust-education

---

presentations, the presenters tried to associate "Christian Churches," "Christian Nationalism," "White Nationalism," "the far right," "Right-wing populism," and "antifeminists" with historical Nazism. *See* Exhibit B, Symposium Program.

14. Because the "scholars" were identified and selected from Professor Kohen's Twitter "followers," (Twitter users who had chosen to "follow" Professor Kohen's account) it was no surprise that they shared his exact viewpoints that he espoused, that today's ills can be blamed on "Christian Nationalism."

15. For instance, on July 7, 2023, Professor Kohen tweeted: "The extremely nasty replies to this tweet provide a really good example of the way in which **homophobic Christian nationalists** have completely co-opted the serious issue of human trafficking such that it means whatever things they don't personally approve of at the moment." (emphasis added).



16. Two of the "scholars" did not even claim to be academic.

17. One was a "senior correspondent" for Vox, an online magazine viewed to be biased from the left. *See e.g.*, "AllSides." "Vox Rated Left in Apr. 2022 Independent Review." (last accessed July 23, 2023). [4]

18. Another was from ADL, formerly a Jewish-civil-rights organization that changed its mission to advocate for progressive causes. *See e.g.*, Leibovitz, Liel. "*No More ADL: When It Comes to*

---

[4] https://www.allsides.com/news-source/vox-news-media-bias#april2022

*Jews, the Organization Now Does More Harm than Good.*" Tablet Magazine, Nov. 7, 2022, (last accessed July 23, 2023).[5]

19. ADL is yet another participant who was also chosen for holding the professors' predetermined opinion that "Christian Nationalists" are the cause of today's problems. *See e.g.*, "Center on Extremism." "Fuentes Delivers Antisemitic, 'Christian Nationalist' Rant to Fellow White Supremacists." Anti-Defamation League, Mar. 7, 2023, (last accessed July 23, 2023). [6]

20. Not only do the professors blame antisemitism on "Christian Nationalists," Professor Kohen's Twitter account takes the attack even further by explicitly and inexcusably linking historical Nazism to modern day Nebraskans.

21. For instance, on October 12, 2020, Professor Kohen Tweeted: "The more I learn, the more I'm actually very scared to live here [Nebraska]. This place very much seems to be run by Nazis and they're a hub for police, military, and para-military right-wingers. And everyone seems to be OK with pretending something different is going on."[7]

---

[5] www.tabletmag.com/sections/news/articles/no-more-adl-liel-liebovitz-kyrie-irving

[6] www.adl.org/resources/blog/fuentes-delivers-antisemitic-christian-nationalist-rant-fellow-white-supremacists.

[7] https://twitter.com/kohenari/status/1315615226230964224



22. On December 28, 2020, Professor Kohen Tweeted: "You don't believe that people in Nebraska are Nazis and Nazi sympathizers? Literally the only thing I knew about Lincoln, Nebraska before I moved here was that pretty much ALL the Nazi literature in the world was printed here."[8] *See* Exhibit D.

---

[8] https://twitter.com/kohenari/status/1343735154204880898

23. On March 22, 2019, Professor Kohen alleged on Facebook that two UNL students who worked for a conservative congressman were "flashing the same White Power symbol as the New Zealand mass murderer."[9]

24. This lack of commitment to academic values and transparent ad hominem political attacks by a UNL professor on fellow Nebraskans betray the principals of Nebraska and its citizens. As a public event held at a public institution, Nebraskans expect the Symposium to be a beacon of unbiased education and transparency, and not as a forum to level cheap partisan attacks. Good academic practice necessitates that the process of inquiry and the production of knowledge are open to scrutiny. This allows for the ongoing refinement of ideas and maintains the integrity of academic discourse. However, by failing to maintain or disclose adequate records of the symposium's organization, the University hampered the ability of scholars, students, and the wider community to review and evaluate the basis on which speakers were chosen, the content that was shared, and the academic value of the event itself.

25. This lack of transparency and accountability also fuels suspicion about potential bias in the event's organization, as without a visible and comprehensible paper trail, there is no way to ensure that the selection process for speakers, the formulation of the program, or the content presented was unbiased and intellectually rigorous.

26. When JLN requested copies of the presentations delivered publicly at the 2023 Symposium, UNL outright denied the requests. The University cited Neb. Rev. Stat. § 84-712.05(3), arguing that the presentations constituted "unpublished academic research."

27. But this response was opaque, as the response belied the public nature of the requested presentations being published in a public forum at the Symposium in March.

28. JLN followed up by requesting that the University redact any confidential portions and disclose the rest, but, inexplicably, UNL again refused.

---

[9] https://www.dailynebraskan.com/news/unl-associate-professor-believes-ok-hand-gesture-can-signify-white-supremacy/article_53d85f00-5679-11e9-afee-0fef7bd21db7.html

7

29. This refusal to disclose even redacted versions of the presentations appeared to contradict the public spirit of a Nebraska Symposium. The public is entitled to view these presentations that are intended for us all to learn and benefit.

30. JLN then requested presentations from the previous symposium, held in 2019, but the University also failed to adequately search or produce those either, and instead referred JLN to purchase a book authored by Professors Kohen and Steinacher for $35.00.

31. Investigating further, JLN's concerns deepened. They found no official call for presentations or methodical approach to determine the quality of the presenters. Instead, the presenters appeared to be selected based on a single UNL professor's Twitter followers, suggesting a departure from academic rigor and integrity.

32. In denying JLN's requests and seemingly allowing personal interests to shape a supposedly public and academic event, UNL erected a barrier of opacity around an event of great public and historical significance. This approach does not just breach the community's trust, but it also risks the integrity of Holocaust education at UNL.

33. In the face of these alarming findings, the community demands better. The study of the Holocaust, a testament to one of humanity's darkest periods, must never be influenced by personal or partisan interests. It is our responsibility to ensure this education is treated with the respect, transparency, and intellectual rigor it demands and deserves. For the memory of those who suffered, for the lessons we must learn, and for the future we strive to shape, we owe it to ourselves and our children to do better.

34. UNL must implement a system of non-partisan supervision over professors responsible for planning public events to prevent what happened here and ensure in the future that one narrow viewpoint does not monopolize something as important as a public symposium on the Holocaust. Universities across the globe have long established rigorous systems to ensure that diverse viewpoints are represented and that presentations for academic conferences and symposiums meet a standard of quality. These protocols, steeped in a tradition of intellectual rigor and diversity, ensure that academic presentations are more than just informative – they should be analytical, balanced, and provoke thought and discussion. Relators hope

their suit will spur a series of reforms in next year's Holocaust Symposium that should include at least the following:

35. Cessation of Ad Hominem Attacks: The Symposium should focus on academic research and not become a forum where any one group of people (especially Nebraskans) are scapegoated or blamed using ad hominem attacks. The level of academic integrity in presentations must be rigorous. Casting assumptions and blame about any one group of people runs contrary to the lessons learned in the Holocaust. The Holocaust cannot be used to stir up anger against modern day political opponents. Assumptions and accusations leveled at certain groups of people are not a valid substitute for the academic research that was lacking at the Symposium.

36. Commitment to Diversity of Viewpoints: The Symposium should be committed to the integrity of open academic inquiry. Professors cannot plan important public events in an "echo chamber." They must seek input from those who hold opposing opinions and different backgrounds from themselves. Presenters must come from varied backgrounds and not adhere to only a single viewpoint.

37. Call for Papers: A common practice to kick-start an academic event is a "Call for Papers" (CFP). In a CFP, the event organizers outline the theme or topics of interest and invite scholars to submit abstracts or full papers. The CFP ensures that submissions are open to anyone with expertise or interest in the field, promoting a diversity of viewpoints. This could also improve the transparency and quality of the Symposium by exposing the selection of the scholars to the public.

38. Peer Review: Submitted papers are often peer-reviewed by a committee of experts in the field. The committee evaluates each submission for its relevance to the conference theme, its scholarly merit, and its contribution to the field of study. This process ensures that only presentations of high academic quality and rigor make it to the event.

39. Public Input: Some conferences also allow for public input for planning presentations. This keeps the presenters accountable, encourages varied viewpoints, and ensures a comprehensive exploration of the topic. Input from a wide diversity of political opinions should be considered.

40. When these protocols are followed, they create a diverse, intellectually stimulating event that promotes academic growth and knowledge dissemination.

41. However, when they are ignored or circumvented, as appears to be the case with the 2023 Holocaust Symposium at UNL, it undermines the academic integrity of the event and raises serious concerns about the quality and diversity of the presentations.

42. The study of the Holocaust at UNL must not fall further into the hands of corrupt partisan interests. That would be a breach of trust to the community and a profound disrespect to the memory of the Holocaust victims.

### JURISDICTION AND VENUE

43. This Court has jurisdiction over the matter pursuant to Neb. Rev. Stat. § 84-712.03(2) to enjoin the Respondents from withholding records, to order the disclosure of records, and to grant such other equitable relief as may be proper.

44. Venue is proper in this district pursuant to Neb. Rev. Stat. § 84-2.03(1)(a) because Respondents are located within this district and may be served in this district.

### PARTIES

45. Petitioner JEWISH LEGAL NEWS, INC. ("JLN") is a non-profit news and opinion website based in San Mateo, California.

46. Respondent University of Nebraska at Lincoln is a public university headquartered in Lincoln, Nebraska.

47. Respondent Jaclyn Klintoe is Director of University Records for the University of Nebraska. Respondent denied Relator's requests for records and is the custodian of UNL's records for purposes of the Public Records Act, Neb. Rev. Stat §§ 84-712, 712.03(1)(a). Ms. Klintoe is sued in her official capacity.

### NATURE OF THE ACTION

48. This is a public records case related to the Sommerhouser Holocaust Symposium at the University of Nebraska in Lincoln.

10

49. This is a petition for a Writ of Mandamus pursuant to the Public Records Act, Neb. Rev. Stat. § 84-712.03(1)(a), against UNL and Ms. Klintoe, the Custodian of Records, who in her official capacity is responsible for the UNL's failure to comply with the Act in response to Relator's request for records.

50. Relator seeks expedited treatment of this case pursuant to Neb. Rev. Stat. § 84-712.03(3).

## FACTUAL ALLEGATIONS

51. The Sommerhauser Symposium on Holocaust Education occurred on March 27, 2023. On April 7, 2023, an attorney writing on behalf of Jewish Legal News sent an email to Renee Hagerman, the custodian of records at the University of Nebraska, requesting copies of the presentations delivered at the Sommerhauser Symposium on Holocaust Education (Email to Renee Hagerman, April 7, 2023, Attached as Exhibit E).

52. On April 10, 2023, Ms. Jaclyn Klintoe responded, stating that the University of Nebraska would decline to provide the requested materials due to the Nebraska Public Records Act, which allows public bodies to withhold ongoing, unpublished research (Email from Jaclyn Klintoe, April 10, 2023, attached as Exhibit F).

53. On April 11, 2023, JLN broadened its request and asked for any general materials, nonconfidential parts of the symposium materials, and the event budget (Email to Jaclyn Klintoe, April 11, 2023, attached as Exhibit G)

54. On April 14, 2023, Ms. Klintoe responded that the University had compiled additional materials but maintained its stance on withholding the presentation materials. She also stated that no public records responsive to the program budget request had been identified (Email from Jaclyn Klintoe, April 14, 2023, attached as Exhibit H).

55. On April 18, 2023, JLN requested the presentations again, asking for any confidential portions to be redacted. JLN also requested the event's expense report or all related payments if the expense report was unavailable (Email to Jaclyn Klintoe, April 18, 2023, attached as Exhibit I).

56. On April 27, 2023, Ms. Klintoe provided expenses related to the symposium and reiterated the University's position on withholding presentation materials due to their status as unpublished academic research materials (Email from Jaclyn Klintoe, April 27, 2023, attached as Exhibit J).

57. On May 3, 2023, JLN requested presentations from the most recent previous Sommerhauser Symposium for which the materials would not constitute unpublished research (Email to Jaclyn Klintoe, May 3, 2023, attached as Exhibit K).

58. On May 5, 2023, Ms. Klintoe informed JLN that the most recent symposium occurred in 2019, and the research and presentations from that event were published and could be purchased in the form of a book for $35.00. (Email from Jaclyn Klintoe, May 5, 2023, attached as Exhibit L).

59. On May 5, 2023, JLN clarified its request for the presentations from the symposium, not the book based on the presentations. If those could not be produced, JLN would request presentations from the next most recent symposium before 2019 (Email to Jaclyn Klintoe, May 5, 2023, Attached as Exhibit M).

60. On May 8, 2023, Ms. Klintoe informed JLN that the University was not in possession of copies of individual presentations from the 2019 Symposium as it was not recorded (Email from Jaclyn Klintoe, May 8, 2023, attached as Exhibit N).

61. On May 16, 2023, JLN requested any documents related to planning the most recent symposium, including the process for determining invited speakers, communications related to speaker invitations, and any issued calls for papers or requests for proposals for the event (Email to Jaclyn Klintoe, May 16, 2023, attached as Exhibit O).

62. On May 22, 2023, Ms. Klintoe responded that the University was in the process of searching for and reviewing potentially responsive messages and expected to complete the process in a week (Email from Jaclyn Klintoe, May 22, 2023, attached as Exhibit P)

63. On May 23, 2023, Ms. Klintoe responded again, attaching three documents and stating that "University has identified the attached messages as responsive. Our review efforts are ongoing and I will

supplement this production in the event we identify any additional responsive records." (Email from Jaclyn Klintoe, May 22, 2023, attached as Exhibit Q).

64. UNL has failed to disclose all of the requested records in a timely manner and failed to show that the withheld records qualify for one of the limited exemptions to public disclosure set forth in Neb. Rev. Stat. § 84-712.05.

65. Months have passed since Relator first requested the public data necessary for its reporting, UNL continues without lawful justification to withhold data that indisputably are subject to timely production under the Nebraska Public Records Act.

66. Relator therefore asks this Court to find that UNL has acted contrary to law in refusing to describe and disclose the records sought, and to order UNL immediately to (a) offer a full description of the withheld records and (b) disclose in whole or in part those records that are not properly withheld.

67. The public data sought by Relator do not fall within the limited exemptions to disclosure under the Public Records Act enumerated in Neb. Stat. Ann. § 84-712.05.

**INVALID USE OF EXEMPTIONS**

68. UNL responded to Relator's requests in part that some documents would not be produced under Neb. Rev. Stat. § 84-712.05(3) because they constitute unpublished academic research.

69. On April 10, 2023, JLN received an email from Jaclyn Klintoe, the Director of University Records at the University of Nebraska. Ms. Klintoe informed JLN that the University would decline to provide the materials requested in the April 7, 2023 email. Specifically, she cited Neb. Rev. Stat. § 84-712.05(3), explaining that the presentations from the Sommerhauser Symposium on Holocaust Education were ongoing, unpublished research and, thus, not subject to disclosure under Nebraska's public records laws. This response was attached as Exhibit F.

70. On April 14, 2023, Ms. Klintoe sent another response to JLN's modified request of April 11, 2023. She maintained the University's position that the presentation materials could be withheld under Neb. Rev. Stat. § 84-712.05(3) as they were considered unpublished academic research materials.

13

71. This exemption is invalid. The exemption does not apply if the data has been publicly disclosed in open court, open administrative proceeding, or open meeting, or disclosed by a public entity pursuant to its duties. Relator requested presentations that had been presented publicly.

72. For the same reason, presentations at a symposium cannot be considered unpublished academic research.

73. Further, the records cannot be withheld as being "in progress," because they were presented in final form at the Symposium. The presentations were finalized and delivered at a public event.

## FAILING TO CONDUCT AN ADEQUATE SEARCH

74. On May 8, 2023, JLN received an email from Jaclyn Klintoe, the Director of University Records at UNL, responding to JLN's request dated May 5, 2023. Ms. Klintoe stated that, following internal discussions, the University did not possess copies of the individual presentations from the 2019 Sommerhauser Symposium on Holocaust Education. This response is attached as Exhibit N.

75. Respondents' production remains incomplete because actual possession is not required, possession includes any documents or records that a public body is entitled to possess—regardless of whether the public body takes possession.

76. Respondents' production also remains incomplete because Respondents did not sufficiently describe how they searched their records.

77. Relator now brings this petition for a Writ of Mandamus in order to compel the Respondents to comply with the law, and to produce the withheld records, or any portions thereof that are not properly exempt. Respondents must also provide a detailed description of any records that are withheld, along with specific explanations for why each record (or portion thereof) falls under a particular basis for withholding. Relator has no available remedies other than this proceeding, and Relator has not previously applied for the relief requested herein.

**First Cause of Action**
**Violation of Nebraska Public Records Act**
**Invalid Use of Exemption 3**
**Neb. Rev. Stat. §§ 84-712.03(1)(a)**

78. Relator repeats and re-alleges paragraphs 1 through 77 as if set forth in full.

14

79. The University of Nebraska is a public agency for the purposes of the Nebraska Public Records Act.

80. Under the Nebraska Public Records Act, all of the documentary materials in possession of the UNL are presumptively open and available for public examination, unless otherwise provided by law. Neb. Rev. Stat. §§ 84-712, 712.01(1).

81. JLN requested records from UNL. The requested records are public records as defined by § 84-712.01.

82. In response to a request for presentations held at the 2023 Sommerhauser Holocaust Symposia., UNL asserted that it was exempted under: Neb. Rev. Stat. § 84-712.05(3), which exempts "Trade secrets, academic and scientific research work which is in progress and unpublished, and other proprietary or commercial information which if released would give advantage to business competitors and serve no public purpose . . . ."

83. In refusing to timely produce data, Respondents relied on the exemption for unpublished research, but the requested materials were published at symposia, so they cannot be considered unpublished.

84. § 84-712.05(3) is an exemption from disclosure that the public body must prove applies by clear and convincing evidence.

85. Respondents failed to prove by clear and conclusive evidence that any of the requested records are exempt as unpublished research.

86. By Respondents' refusal to provide timely compliance with the Act, by Respondent's reliance on an inapplicable exemption classification, by Respondents' continuing willful refusal to provide documents responsive to three of Relator's requests (Exhibits F, H, and N), and by production of only a partial response of the documents in Respondents' custody responsive to the three requests (Exhibits J, L and Q), Respondents violated the Nebraska Public Records Act, Neb. Rev. Stat. § 84.712 et seq., and thereby caused Relator to obtain legal counsel to obtain the desired relief.

87. WHEREFORE, Plaintiff prays for judgment as set forth below.

**Second Cause of Action**
**Violation of Nebraska Public Records Act**
**Failure to Conduct Adequate Search and Disclose Results**
**Neb. Rev. Stat 84-712.03(1)(a)**

88. Relator repeats and re-alleges paragraphs 1 through 85 as if set forth in full.

89. The Public Records Act requires that when a public body denies a request for records, it must provide a full description of the contents of the records withheld and a statement of the specific reasons for denial, correlating specific portions of the records to specific reasons for denial. Neb. Rev. Stat. § 84-712.04.

90. JLN requested records from UNL.

91. The requested records are public records as defined by § 84-712.01.

92. UNL failed to describe how it conducted it search, including what keywords were used.

93. In the Exhibit H Email of April 14, 2023, again, UNL claimed exemptions to the release of some records, but did not describe its search or the records withheld.

94. In the Exhibit J Email of April 27, 2023, UNL reiterated its position that it would withhold records as unpublished research, without describing the search or providing any description of the records that were being withheld.

95. In the Exhibit L Email of May 5, 2023, again, UNL claimed the only material available was a published book and failed to describe the search conducted or the documents being withheld.

96. In the Exhibit N of Email of May 8, 2023, UNL again denied the request for certain records without offering a description of the search or the records being withheld.

97. In the Exhibit Q of Email of May 30, 2023, UNL provided partially responsive documents but never indicated its search was complete.

98. UNL failed to describe records and justify its refusal to disclose. For example, Respondents have not provided a description of the contents of the records or specific reasons for denial, stating only that the presentations were exempt from disclosure as unpublished research.

99. Respondents have therefore failed to justify its refusal to disclose the withheld records as specifically required by law. In the absence of such a justification, the withheld records must be released.

16

**Third Cause of Action**
**Violation of Nebraska Public Records Act**
**Failure to Reasonably Segregate**
**Neb. Rev. Stat 84-712.06**

100. Relator repeats and re-alleges paragraphs 1 through 95 as if set forth in full.

101. The University of Nebraska is a public agency for the purposes of the Nebraska Public Records Act.

102. Under the Nebraska Public Records Act, all of the documentary materials in possession of the UNL are presumptively open and available for public examination, unless otherwise provided by law. Neb. Rev. Stat. §§ 84-712, 712.01(1).

103. In response to a request for presentations held at the 2023 Sommerhauser Holocaust Symposia., UNL asserted that it was exempted, but it failed to reasonably segregate the exempt portions.

104. The requested records are public records as defined by § 84-712.01.

105. Section 84-712.06 of the public records statutes requires that "[a]ny reasonably segregable portion of a record shall be provided to the public as a public record upon request after deletion of the portions which may be withheld."

106. Effectively, each document consists of "discrete units of information," all of which must fall within a statutory exemption in order for the entire document to be withheld. *Mo. Coalition for Environment v. U.S. Army Corps*, 542 F.3d 1204 (8th Cir. 2008).

107. In the Exhibit H Email of April 14, 2023, again, UNL claimed exemptions to the release of some records, but failed to reasonably segregate the purportedly exemption portion from the purportedly non-exempt portion.

108. In the Exhibit J Email of April 27, 2023, UNL reiterated its position that it would withhold records as unpublished research, but failed to reasonably segregate the purportedly exemption portion from the purportedly non-exempt portion.

109. In the Exhibit L Email of May 5, 2023, again, UNL claimed the only material available was a published book, but failed to reasonably segregate the purportedly exemption portion from the purportedly non-exempt portion.

17

110. In the Exhibit N of Email of May 8, 2023, UNL again denied the request for certain records but failed to reasonably segregate the purportedly exemption portion from the purportedly non-exempt portion.

111. The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption. Agencies are required to disclose nonexempt portions of a document, unless those nonexempt portions are inextricably intertwined with exempt portions. *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

112. Respondents have therefore failed to justify their refusal to reasonably segregate the withheld materials specifically required by law. In the absence of such a justification, the withheld records must be released.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Relator, prays for the following relief:

A. Enjoining Respondents from withholding the records requested by Relator;

B. Declaring that Respondents have violated the Public Records Act in failing to perform an adequate search and properly justify its refusal to disclose all of the records requested by Relator;

C. Declaring that Respondents have violated the Public Records Act in withholding the records requested by Relator;

D. Ordering the Respondents to disclose the requested records to the Relator;

E. Awarding Relator's costs and reasonable attorneys' fees pursuant to Neb. Rev. Stat. § 25-2165 and § 84-712.07;

F. Granting Relator such other and further relief as this Court deems just and proper.

Dated: August 10, 2023    Respectfully submitted,

By: */s/*Wolfgang Mateus Tattenbach
Wolfgang Tattenbach (#27713)
Tattenbach Legal Group, LLC
608 N. Saddle Creek Rd. PO Box 31343
Omaha NE 68131
Telephone: (402) 881-0717
*wolf@tattenbach.com*

*Attorneys for Relator*
Jewish Legal News, Inc.